UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SILAS WILLIAMS,      Case No.
    HON.
    Plaintiff,    MAG. JUD.

vs.

SCHOOL DISTRICT OF THE CITY OF
HAMTRAMCK PUBLIC SCHOOLS
and JALEELAH HASSAN AHMED,
individually and in her official capacity,
and jointly and severally,

    Defendants.
_____

GARY T. MIOTKE (P41813)
Attorney for Plaintiff
6828 Park Avenue
Allen Park, MI 48101
(313)-388-4809
gmiotke@miotkelawoffice.com
_____

COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, by and through his attorney, and for his Complaint he states that:

JURISDICTION, PARTIES, VENUE

1. This action arises out of the Plaintiff's prospective employment with Defendant, SCHOOL DISTRICT OF THE CITY OF HAMTRAMCK PUBLIC SCHOOLS.

1

2. Count I is a claim for race, color, religious, and sex discrimination pursuant to Title VII, 42 USC 2000e et seq.

3. This Court has jurisdiction over Count I pursuant to 42 USC 2000e-5 and 28 USC 1331, 1343.

4. Further, Count I has been properly filed by Plaintiff in this Complaint within 90 days after Plaintiff received a "right-to-sue" letter from the EEOC.

5. This Court has jurisdiction over Count II by virtue of the doctrine of supplemental jurisdiction, 28 USC 1367.

6. Plaintiff is a resident of a municipality that exists within the Eastern District of Michigan, Southern Division..

7. Plaintiff is an African American, black, male person who has a Christian religious affiliation.

8. Defendant, SCHOOL DISTRICT OF THE CITY OF HAMTRAMCK PUBLIC SCHOOLS ("HPS") is a school district that exists by virtue of the laws of the State of Michigan within the Eastern District of Michigan, Southern Division.

9. Defendant, JALEELAH HASSAN AHMED ("AHMED") is a resident of a municipality that exists within the Eastern District of Michigan, Southern Division who is a Yemeni American, Arab, female person who is a practicing Muslim.

10. The events giving rise to this case arose within the Eastern District of Michigan.

## BACKGROUND FACTS

11. In late January 2023, Plaintiff applied with HPS to be hired by HPS for an Assistant Principal position at Dickinson West Elementary School in Hamtramck, Michigan.

12. Because Plaintiff had the education, experience, and ability needed to perform the duties of this position, Plaintiff was clearly qualified for this position.

13. On February 6, 2023, Plaintiff was interviewed by the school's leadership, including Joi Danforth who was serving as the Principal at Dickinson West Elementary School.

14. This first interview went very well, and Plaintiff was one of three applicants selected to go through to the second stage of interviews for the position.

15. On February 13, 2023, Plaintiff was interviewed by HPS's administrative leadership except for its Interim Superintendent.

16. This second interview also went very well.

17. After this second interview, the panel that had conducted the second stage of interviews spoke to Ms. Danforth and asked her who she would recommend for the third stage of interviews for the position.

18. Ms. Danforth strongly recommended that the Plaintiff progress to the third stage of interviews for the position.

19. On February 17, 2023, Plaintiff progressed to the third stage of interviews for the position and was interviewed by HPS's Interim Superintendent.

20. This third interview also went very well.

21. After this third interview, HPS's Interim Superintendent spoke to Ms. Danforth and asked her who she would recommend for the position.

22. Ms. Danforth strongly recommended the Plaintiff for the position.

23. On February 17, 2023, Plaintiff received a phone call from an HPS employee with human resources responsibilities and was told by this employee that he was selected for the position.

24. Thereafter, Plaintiff received information from HPS about certain aspects of his impending employment with HPS.

25. This included a call from human resources in or around the last week of February 2023 wherein the Plaintiff was told that they were working on his salary and his contract letter.

26. Indeed, based on the information Plaintiff received, his impending employment with HPS was presented as imminent with HPS's School Board's vote approving Plaintiff for the position viewed as being merely a formality.

27. However, on February 22, 2023, HPS's School Board passed a motion or resolution reinstating AHMED as HPS's Superintendent and effectively eliminated the person who had acted as HPS's Interim Superintendent as HPS's Interim Superintendent.

28. For all times material to this Complaint, AHMED and HPS's School Board knew the Plaintiff's race, color, religion, and sex.

29. In March 2023, the hiring of Plaintiff was not on the agendas for HPS's School Board meetings.

30. Thereafter, Plaintiff emailed HPS and made calls to it inquiring about the position.

31. No one from HPS responded to his calls or emails.

32. However, Ms. Danforth reached out to AHMED in March and April of 2023, inquiring about why there was a delay in hiring the Plaintiff for the position.

33. Originally, AHMED tried to justify the failure to hire the Plaintiff by stating that there needed to be data to support the decision to have an Assistant Principal position at Dickinson West Elementary School.

34. Yet, this was clearly shown to be a pretext where AHMED, over the objection of Ms. Danforth, thereafter, assigned another person to perform the duties associated with the Assistant Principal position and also gave this other person the perks of this position including the office for the position.

35. Unlike the Plaintiff, this other person was (1) a Yemeni or Lebanese American, Arab, female person who was a practicing Muslim and (2) unqualified for the position.

36. These events ultimately prompted Ms. Danforth to resign from her position and to take employment elsewhere.

37. Finally, in May 2023, Plaintiff received an email from HPS saying that the position was no longer available.

38. In June 2023, the position was reposted.

39. Thereafter, the Plaintiff again applied for the position.

40. Yet, despite his being the person previously selected for the position pending the approval of the HPS School Board, the Defendants did not even interview the Plaintiff for the position.

41. Instead, a female person was ultimately hired into the position.

COUNT I:  DISCRIMINATION BASED ON RACE, COLOR, RELIGION, AND/OR SEX IN VIOLATION OF TITLE VII

42. The Plaintiff incorporates paragraphs 1 through 41 above by reference.

43. Each Defendant was an "employer" within the meaning of Title VII.

44. Plaintiff was discriminated against by the Defendants because of his race, color, religion, and/or sex in violation of Title VII.

45. Specifically, once in or around the Spring of 2023 (but necessarily after February 22, 2023) and once again in the Summer of 2023 (but necessarily no

6

sooner than June 2023), the Defendants failed to hire the Plaintiff into the Assistant Principal position and/or refused to consider hiring him into this position because of his race, color, religion, and/or sex.

46. Further, the Defendants did so with malice and/or in reckless disregard of the Plaintiff's rights.

47. As a direct and proximate result of the Defendants' violations of the Plaintiff's rights, Plaintiff has sustained damages including (but not necessarily limited to) the following:

    (a)  Loss of income;

    (b)  Loss of fringe benefits;

    (c)  Loss of pension and/or Social Security benefits;

    (d)  Severe mental anguish and distress;

    (e)  Embarrassment and humiliation;

    (f)  Mental anguish stemming from the outrage he experienced as a result of the actions against him;

    (g)  Fright, shock, and mortification;

    (h)  Pain and suffering;

    (i)  Damage to reputation;

    (j) Liquidated damages;

(k) Damages based on his reliance on the representations made by HPS employees that he was going to be hired;

(l) Punitive damages; and

(m) Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in his favor against the Defendants, jointly and severally, awarding him an amount in excess of Five Hundred Thousand ($500,000.00) Dollars to which he is entitled for compensatory, exemplary, liquidated, and punitive damages; granting him equitable relief; and awarding him costs, interest, and attorney fees so wrongfully incurred.

## COUNT II: DISCRIMINATION BASED ON RACE, COLOR, RELIGION, AND/OR SEX IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")

48. Plaintiff incorporates paragraphs 1 through 47 above by reference.

49. Each Defendant was an "employer" within the meaning of the ELCRA.

50. Plaintiff was discriminated against by the Defendants because of his race, color, religion, and/or sex in violation of the ELCRA.

51. Specifically, once in or around the Spring of 2023 (but necessarily after February 22, 2023) and once again in the Summer of 2023 (but necessarily no sooner than June 2023), the Defendants failed to hire the Plaintiff into the Assistant

Principal position and/or refused to consider hiring him into this position because of his race, color, religion, and/or sex.

52. Further, the Defendants did so with malice and/or in reckless disregard of the Plaintiff's rights.

53. As a direct and proximate result of the Defendants' violations of the Plaintiff's rights, Plaintiff has sustained damages including (but not necessarily limited to) the following:

    (a) Loss of income;

    (b) Loss of fringe benefits;

    (c) Loss of pension and/or Social Security benefits;

    (d) Severe mental anguish and distress;

    (e) Embarrassment and humiliation;

    (f) Mental anguish stemming from the outrage he experienced as a result of the actions against him;

    (g) Fright, shock, and mortification;

    (h) Pain and suffering;

    (i) Damage to reputation;

    (j) Liquidated damages;

    (k) Damages based on his reliance on the representations made by HPS employees that he was going to be hired;

      (l) Punitive damages; and

      (m)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in his favor against the Defendants, jointly and severally, awarding him an amount in excess of Five Hundred Thousand ($500,000.00) Dollars to which he is entitled for compensatory, exemplary, liquidated, and punitive damages; granting him equitable relief; and awarding him costs, interest, and attorney fees so wrongfully incurred.

      DEMAND FOR TRIAL BY JURY IS HEREBY MADE.

DATED: February 20, 2026        /s/ GARY T. MIOTKE_____
                                        GARY T. MIOTKE (P41813)
                                        Attorney for Plaintiff